UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAMAR FLETCHER acting as Administrator of THE ESTATE of DERANNA FLETCHER,<br><br>  Plaintiff,<br><br>  v.<br><br>CONNECTICUT DEPARTMENT of CORRECTIONS; HARTFORD COMMUNITY CORRECTION CENTER; JAMES E. DZURENDA, DOC Commissioner in his official and individual capacities; WALTER FORD, HCC Warden, in his official and individual capacities<br><br>  Defendants. | No. 3:16-cv-00152 (MPS) |

## RULING AND ORDER

### I.    Introduction

The plaintiff, Lamar Fletcher ("Mr. Fletcher"), is acting as Administrator of the Estate of Deranna Fletcher ("Decedent"). (ECF No. 23 at ¶ 5.) He brings this case against the Connecticut Department of Corrections ("DOC"); Hartford Correctional Center ("HCC"); James E. Dzurenda, DOC Commissioner ("Commissioner") during the Decedent's incarceration, in his official and personal capacities; and Walter Ford, HCC Warden ("Warden") during the Decedent's incarceration, in his official and personal capacities. (*Id.* at ¶¶ 5–9.) The Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and Mr. Fletcher has filed an unopposed motion to amend the complaint to plead the additional fact that he is the administrator of the Decedent's Estate. I hereby GRANT the Motion to Amend (ECF No. 22) and treat Defendants' motion to dismiss as addressed to the Second Amended Complaint (ECF No. 23).

1

According to the complaint, this case is about a man who made several suicide attempts while in the custody of the DOC, the last of which caused 21 months of hospitalization and his death. (ECF No. 23 at ¶¶ 21–22.) Before his final suicide attempt, the Decedent continuously threatened and exhibited self-harm behaviors, causing mental health assessors to put him on a suicide watch and recommend transfer to an inpatient mental health facility. *Id.* at ¶¶ 16–17. Despite these recommendations, the DOC, HCC, Commissioner, and Warden failed to act. *Id.* at ¶¶ 2–3, 19–20. Mr. Fletcher alleges that the defendants (1) violated the Decedent's civil rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, under 42 U.S.C. § 1983, and violated Article 1, §§ 7, 8, and 9 of the Connecticut Constitution; (2) caused the Decedent's fatal injuries, under C.G.S. § 52-555; (3) intentionally inflicted emotional distress on the Decedent in violation of Connecticut common law; and (4) negligently inflicted emotional distress on the Decedent in violation of Connecticut common law. *Id.* at ¶¶ 1, 26. Mr. Fletcher specifically seeks actual and compensatory damages, damages for emotional suffering, statutory damages, punitive damages, and attorney's fees and costs. *Id.* at ¶ 9.

For reasons discussed below, the defendants' Motion to Dismiss (ECF No. 17) is GRANTED in part and DENIED in part. Counts One, Two, Three, and Four are dismissed as to the DOC, HCC, and individual defendants in their official capacities, and Count Four is dismissed as to the individual defendants in their personal capacities. Counts One, Two, and Three against the individual defendants in their personal capacities remain.

## II.     Factual Allegations

### A. The Decedent's Arrest and Unsuccessful Suicide Attempts

On January 17, 2014, Hartford Police arrested the Decedent and charged him with two counts of murder and one count of possession of a firearm. (ECF No. 23 at ¶ 13.) Later that day,

while in custody at HCC, the Decedent unsuccessfully attempted suicide by wrapping a telephone cord around his neck. *Id.* at ¶ 14. As a result, a HCC mental health professional performed an assessment on the Decedent, during which the Decedent described his life as unbearable and expressed that his life was over. *Id.* at ¶ 16. The HCC staff member placed him on a suicide watch. *Id.*

During a break in interrogation on January 30, 2014, while detectives stepped out of the interrogation area, the Decedent unsuccessfully attempted to hang himself again by fashioning a makeshift noose out of a computer cable and placing it around his neck. *Id.* at ¶ 15. HCC conducted a Suicide Risk Assessment on January 31, 2014, at which point personnel concluded that the Decedent suffered serious mental health issues. *Id.* at ¶ 17. During that assessment, the Decedent threatened self-injury and expressed his belief that it was unlikely he would ever be reunited with his daughter. *Id.* In the words of the Decedent's examiner, "this inmate is at a high imminent risk for a potentially lethal suicide attempt and should be transferred to an inpatient facility." *Id.*

### B. The Decedent's Final Suicide Attempt and Fatal Injuries

February 2, 2014 was the Decedent's twenty-sixth birthday and was the day before his scheduled appearance in Hartford Superior Court. *Id.* at ¶ 19. DOC personnel conducted a psychiatric evaluation of the Decedent on February 2, during which he stated that he felt worse because of his birthday and that he tried to kill himself. *Id.* at ¶¶ 19, 30. Later that day, the Decedent again attempted to hang himself, resulting in serious injuries, including anoxic encephalopathy caused by a left cerebral infarct, aphasia, and a stroke. *Id.* at ¶¶ 21, 31. The Decedent was transported to the University of Connecticut Health Center, where he remained until his death on November 18, 2015. *Id.* at ¶ 22.

Throughout his suicidal behavior and threats, the Decedent was in the exclusive custody and control of the defendants. *Id.* at ¶ 23. The Warden, who was responsible for the Decedent's care and safety at all times during his incarceration, was aware of the Decedent's suicidal behavior and threats, but failed to intervene by requesting antidepressants or transferring him to an inpatient facility. *Id.* at ¶¶ 18–19, 23–24, 30. Mr. Fletcher alleges the Decedent's fatal injuries were a result of the defendants' deliberate indifference to the very high likelihood that the Decedent would attempt to take his own life. *Id.* at ¶ 2. Mr. Fletcher further contends that the individual defendants, in their personal capacities, tolerated, condoned, encouraged, authorized, and/or ratified the deliberate indifference toward the Decedent's high likelihood of suicide. *Id.* at ¶¶ 2–3, 18.

### III.  Legal Standard

In considering a motion to dismiss, I take Mr. Fletcher's "factual allegations to be true and [draw] all reasonable inferences in" his favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. Discussion

### A. The Eleventh Amendment Bars All Federal and State Claims Against the DOC, HCC, and Individual Defendants in their Official Capacities

The Eleventh Amendment to the United States Constitution bars Mr. Fletcher's federal and state claims against the DOC, HCC, and the individual defendants in their official capacities. The Amendment states, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

The Supreme Court has established that "[a]lthough the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, we have understood the Eleventh Amendment to stand not so much for what it says, but for the [two] presupposition[s] which it confirms." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal quotation marks omitted). "[F]irst, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Id.* (internal quotation marks omitted). Moreover, "[w]hen sovereign immunity is claimed as a defense to a cause of action pursuant to § 1983, federal sovereign immunity jurisprudence preempts analysis under state law." *Sullins v. Rodriguez*, 281 Conn. 128, 133 (2007).

As the Eleventh Amendment relates to the DOC and HCC, the Supreme Court clarified that sovereign immunity applies "to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70 (1989). The Second Circuit specified that "agencies of the state of Connecticut [are] . . .

immune from suit to the same extent as the state itself." *In Re Charter Oak Assoc.*, 361 F.3d 760, 764 n.1 (2d Cir. 2004).

The Eleventh Amendment also applies to the individual defendants in their official capacities. "Official-capacity suits… generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted). The Supreme Court emphasized that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

The Eleventh Amendment operates here to bar not only the federal law claims, but also the state law claims. The U.S. Supreme Court has established that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984). This is because the "Eleventh Amendment is an explicit limitation on the judicial power of the United States . . . [i]t deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Article III's grant of jurisdiction." *Id.* at 119–20 (internal quotation marks and citation omitted). Therefore, even though the defendants here do not argue that the Eleventh Amendment bars the state law claims, the court raises the issue *sua sponte* because an Eleventh Amendment bar deprives the Court of subject matter jurisdiction.

The Supreme Court emphasized that "[t]he Amendment thus is a specific constitutional bar," and that the "bar applies to pendent claims as well." *Id.* at 120. It reasoned that "pendent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all cases arising under federal law," and therefore, "[t]he Eleventh Amendment should not be construed to apply with less force to this implied form of

jurisdiction than it does to the explicitly granted power to hear federal claims." *Id.* at 120 (internal quotation marks omitted). In short, the Court concluded that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Id.* at 121.

As it relates to this case, the Court in *Pennhurst* expressly stated that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment . . . . We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* Therefore, as it applies to this case, Mr. Fletcher's state law claims, like his federal constitutional claims, are barred by the Eleventh Amendment.

There exists, however, a "well-known exception" to the rule of sovereign immunity for individuals acting in their official capacity, where "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal citations and quotation marks omitted). For the exception to apply, there must "exist[] an ongoing violation of federal law," and the court must "ask whether the claimed remedy is still available." *Id.* at 96. Mr. Fletcher neither alleges facts demonstrating an ongoing violation of the Decedent's rights, nor does he expressly seek prospective relief. Therefore, this exception does not apply.

The Supreme Court established another exception to the Eleventh Amendment: "[a] sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court. We have insisted, however, that the State's consent be

unequivocally expressed." *Pennhurst*, 465 U.S. at 99 (internal citations omitted). Mr. Fletcher does not claim that the State of Connecticut consented to an action against it.

Given that no exceptions to the Eleventh Amendment apply under these facts, I lack subject matter jurisdiction to hear Mr. Fletcher's: (1) Count One federal and state constitutional claims, (2) Count Two wrongful death claim under C.G.S. § 52-555, (3) Count Three common law claim for intentional infliction of emotional distress, and (4) Count Four common law claim for intentional infliction of emotional distress. Accordingly, I dismiss these claims against the DOC, HCC, and individual defendants in their official capacities.

### B. Whether Statutory Immunity Protects Individual Defendants in Their Personal Capacities from Liability for Counts Two, Three, and Four[1]

*1. Count Two: C.G.S. § 52-555*

In response to Mr. Fletcher's § 52-555 claim, the Warden and Commissioner argue that they are protected from liability, in their personal capacities, under the statutory immunity of C.G.S. § 4-165. (ECF No. 14-1 at 8.) That statute provides, in pertinent part, that:

> No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.

C.G.S. § 4-165(a).

The defendants argue that the conduct Mr. Fletcher alleges is merely negligent, and thus that the statute applies to shield them from personal liability. (ECF No. 14-1 at 8.) In other words, they argue that Mr. Fletcher does not sufficiently allege the "wanton, reckless or malicious" injury required to destroy statutory immunity. *Id.* at 10. They are entitled to dismissal,

---

[1] I do not address the Count One federal and state constitutional claims against the individual defendants in their personal capacities, as they did not move for dismissal of those federal claims, and did not make any arguments in support of dismissal of those state claims. (ECF No. 14-1 at 3–4.)

they argue, because "[c]laims involving the doctrines of common-law sovereign immunity and statutory immunity, pursuant to § 4-165, implicate the court's subject matter jurisdiction." *Lawrence v. Weiner*, 154 Conn. App. 592, 597 (2015) (internal quotation marks and citation omitted).

The Connecticut Supreme Court has "never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165." *Martin v. Brady*, 261 Conn. 372, 379 (2002). When the court seeks to determine if conduct meets that standard it looks to other contexts, such as common law. *Id.* In the common law context, the Connecticut Supreme Court has held that, "[i]n order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove . . . the existence of a state of consciousness with reference to the consequences of one's acts." *Id.* For conduct to rise to that level, it must be "more than negligence, more than gross negligence . . . more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." *Id.* The court describes the standard as "a reckless disregard of the just rights or safety of others or of the consequences of the action," and as conduct "involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Id.*

Based on Mr. Fletcher's factual allegations, the Commissioner and Warden's behavior qualifies as wanton, reckless or malicious. Mr. Fletcher alleges that the defendants knowingly failed to exercise reasonable precautions to avoid injuries to the Decedent, by refusing to "intercede and prevent the clearly obvious impending suicide attempts." (ECF No. 23 at ¶ 20.) The defendants failed to ensure that medications, such as antidepressants, were requested for the Decedent, and did not execute the Suicide Risk Assessment recommendation that he be transferred to an inpatient facility. *Id.* at ¶¶ 17–19. Mr. Fletcher further alleges that the

defendants made an extreme departure from ordinary care where a high degree of danger was apparent. For example, Mr. Fletcher states that "with deliberate indifference the individually named Defendants tolerated, condoned, encouraged, authorized, and/or ratified the aforesaid violations of the rights of the deceased knowingly in their individual capacities." *Id.* at ¶ 3. Moreover, Mr. Fletcher repeatedly asserted that the defendants possessed knowledge and a state of consciousness with reference to the consequences of their acts. They did so by being "fully aware in their individual capacities of the very high likelihood that the deceased would attempt to take his own life," and acted with "deliberate indifference" in failing to protect the Decedent from self-harm. *Id.* at ¶¶ 2, 24, 26.

The Commissioner and Warden, in their personal capacities, are not statutorily immune under § 4-165, based on the allegations of the complaint. Accordingly, I deny the motion to dismiss Count Two, as to the individual defendants in their personal capacities.

   2.   *Count Three: Intentional Infliction of Emotional Distress[2]*

The Warden and Commissioner argue that they are protected from liability for the common law claim of intentional infliction of emotional distress, in their personal capacities, under the statutory immunity of C.G.S. § 4-165. (ECF No. 14-1 at 8.) They premise their immunity argument on the theory that the conduct alleged by Mr. Fletcher amounts to mere negligence, and thus does not meet the standard of "wanton, reckless or malicious" contemplated by the statutory exception. *Id.* at 8–10. Therefore, they argue that the court lacks subject matter jurisdiction over the claim. *Id.*

---

[2] While the initial motion to dismiss sought to dismiss all state law claims against the individual defendants in their personal capacities (ECF No. 14 at 1), the renewed motion to dismiss mentions only "the state law claims advanced in counts two and four." (ECF No. 17 at 1.) Noting this discrepancy, I nonetheless address the arguments for dismissal of Count Three.

10

As discussed above, § 4-165 does not apply because Mr. Fletcher makes factual allegations of the Commissioner and Warden's behavior that qualify as "wanton, reckless or malicious." Accordingly, I deny the motion to dismiss the intentional infliction of emotional distress claim of Count Three as to the individual defendants in their personal capacities.

*3. Count Four: Negligent Infliction of Emotional Distress*

Mr. Fletcher alleges that the individual defendants' actions and inactions were negligent in that they did not behave "as any reasonable individual would have under the circumstances," causing the Decedent to suffer extreme emotional distress. (ECF No. 23 ¶ 40). He avers that this fact supports a common law claim for Negligent Infliction of Emotional Distress. *Id.* at ¶¶ 38–40.

As discussed above, C.G.S. § 4-165 protects state employees from personal liability for injury caused in the discharge of their duty that is "not wanton, reckless or malicious." C.G.S. § 4-165. This statute did not apply above because those other claims were supported by factual allegations of deliberate indifference to the Decedent's health and safety, and the fact that the defendants encouraged and authorized unlawful conduct. (ECF No. 23 ¶ 3.) The statute applies here, however, because under this claim Mr. Fletcher is alleging only negligent action caused the Decedent's injury. *Id.* at ¶¶ 38–40. For example, under this claim, Mr. Fletcher is alleging only negligence in stating that the Warden failed "to act as any reasonable individual would have under the circumstances." *Id.* at ¶ 40. He further alleges that the defendants knew or should have known that they were creating a situation that would cause the Decedent to suffer extreme emotional distress. *Id.* at ¶ 39.

Therefore, the Commissioner and Warden are shielded from personal liability under § 4-165, and Mr. Fletcher's Count Four claim of Negligent Infliction of Emotional Distress is dismissed as to the individual defendants in their personal capacities.

### V.     Conclusion

For reasons discussed above, Mr. Fletcher's Motion to Amend (ECF No. 22) is GRANTED. Defendants' Motion to Dismiss (ECF No. 17) is GRANTED in part and DENIED in part as to the Second Amended Complaint. Counts One, Two, Three, and Four are dismissed as to the DOC, HCC, and individual defendants in their official capacities, and Count Four is dismissed as to the individual defendants in their personal capacities. Counts One, Two, and Three against the individual defendants in their personal capacities remain.

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
　　　　　December 6, 2016